**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re Application of CHEVRON CORPORATION for an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery from MCSquared PR, Inc.,<br><br>      Petitioner. | Case No. 14 MC 392 (LAK) |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF**
**PROPOSED INTERVENOR THE REPUBLIC OF ECUADOR'S**
**MOTION TO QUASH OR MODIFY SUBPOENA, FOR IN CAMERA REVIEW,**
**AND, IN THE ALTERNATIVE, FOR RECIPROCAL DISCOVERY AND**
**ISSUANCE OF A PROTECTIVE ORDER**

Eric W. Bloom (admitted *pro hac vice*)
WINSTON & STRAWN LLP
1700 K Street, N.W.
Washington, DC 20006
Phone:  (202) 282-5000
Fax:       (202) 282-5100
E-mail:  ebloom@winston.com

Aldo A. Badini
WINSTON & STRAWN LLP
200 Park Avenue
New York, New York 10166
Phone:  (212) 294-6700
Fax:       (212) 294-4700
E-mail:  abadini@winston.com

## TABLE OF CONTENTS

                                                                          **Page**

**I.**     **Chevron Fails To Establish The Relevance Of The Requested Discovery To The Identified Foreign Proceedings** ......................................................................................... 1

**II.**    **Chevron Makes No Effort To Address Its Flawed Use Of Section 1782 To Obtain Documents Belonging To A Foreign Sovereign** ....................................................... 4

**III.**   **Absent A Protective Order, This Court Should Grant Reciprocal Discovery** ............. 9

**CONCLUSION** .......................................................................................................................... 10

Chevron's continued inability to articulate a nexus between the requested discovery and the identified foreign proceedings is not surprising. Paired with its simultaneous refusal to consent to a protective order prohibiting the use of any discovery obtained in this action for use in the pending international arbitration against the Republic, Chevron has confirmed what the Republic observed in its Motion: Chevron seeks this discovery *not* for use in the identified foreign proceedings but rather for use in its arbitration against the Republic where Chevron has already placed in controversy the Republic's use of MCSquared. This Court should join its sister courts and deny Chevron's request to engage in yet another fishing expedition. And if discovery of any kind is permitted, then either a protective order should be entered limiting use of the discovery to the identified foreign proceedings or the Republic should be granted reciprocal discovery of the same kind and scope afforded Chevron.

## I. Chevron Fails To Establish The Relevance Of The Requested Discovery To The Identified Foreign Proceedings

In the mere half page it devotes to relevance, Chevron omits any explanation of how discovery from a public relations firm that worked for the Republic for one year commencing May 2013 has *any* nexus to acts alleged to have occurred between 2006 and February 14, 2011, when the Lago Agrio Judgment ("Judgment") was issued.[1] Chevron declines even to acknowledge, much less address, the findings of the U.S. District Court for the District of Colorado or the Supreme Court of Gibraltar, the latter of which described Chevron's efforts to obtain discovery as those of "an industrial trawler scraping a drag net along the ocean bed stirring the mud and hoovering everything found, however valueless." Dkt. 33-1 at 22. Last week, the District Court in Colorado quashed in part Chevron's overbroad subpoena for Section

---

[1] Chevron has not opposed the Republic's request that any compelled discovery first be subject to *in camera* review by either the Court or a bilingual special master to ensure that any discovery is materially relevant.

1

1782 discovery from consultant Andres Snaider for use in the same foreign proceedings. One of Chevron's requests was "so overbroad as to be unintelligible." Ex. 1, Order, *Chevron Corp. v. Snaider*, No. 14-cv-01354 (D. Colo. Jan 15, 2015) (slip op.) at 23. Another 17 document requests "appear[ed] to this court to constitute pure fishing expeditions." *Id.* at 27. And the court found that Chevron's final request relating to certain compensation allegedly paid to Snaider was "propounded to harass and intimidate Snaider in violation of Fed. R. Civ. P. 26 and is a fishing expedition designed to set up a future claim against Snaider." *Id.* at 36-37.

The circumstances presented here similarly demonstrate that what Chevron says does not always reflect what it wants. Chevron seeks the subject discovery purportedly to advance a public policy defense in the LAPs' enforcement efforts. But that defense will require the foreign courts to determine whether the Judgment was procured by fraud. In this respect, Chevron will no doubt rely on its allegations (and this Court's findings) relating to the preparation of Richard Cabrera's report and the Judgment itself. But Chevron has made no showing that (1) *public relations* efforts (2) *post-dating* the Judgment and (3) which are made *outside* of the enforcing courts' jurisdiction are legally relevant to Chevron's public policy defense under the laws of any of the enforcing courts. As the *Snaider* Court recently advised Chevron: "[I]f you've got all the documents that are pre-Ecuadorian judgment, it seems to me that you've got what you are asking for . . . but you're talking about post." Dkt. 33-17 at 3. The Gibraltar Court has been even less kind to Chevron's expansive discovery efforts. Dkt. 33-1 at ¶ 44. Moreover, neither MCSquared nor the Republic is implicated in the Gibraltar complaint, nor is any public relations activity during MCSquared's tenure even mentioned.

Chevron's explanation is reduced to the following proposition: Because the Republic's public relations strategy allegedly overlaps with the LAPs' own interests—something that is

obvious because Chevron has litigated against, arbitrated against, and attacked both using public relations—then the Republic's public relations efforts must necessarily be "part of the extortionate scheme." *See* Dkt. 36 at 17.  But the Republic's public relations efforts were a *response to Chevron's* admitted, systematic public relations, lobbying and litigation campaigns *against the Republic*.  *See* Dkt. 32 at 10-15.

A little history may be helpful.  It is clear that the Republic played absolutely no role in the institution of either the *Aguinda* case in 1993 in this Court or the *Lago Agrio* case in Ecuador in 2003.  "[T]he Plaintiffs' 21-year litigation was brought, twice brought, independent of anything that the government said or did."  Ex. 2, Hr'g Tr., *Chevron Corp. v. Republic of Ecuador*, PCA Case No. 2009-23("Treaty Arbitration") (April 29, 2014) at 428:17-19; *see generally id*. at 426:2-436:20.  Chevron does not allege otherwise.  Then, in 2004, Chevron commenced a AAA arbitration in New York against the Republic, which in turn prompted a five-year litigation in this Court regarding the propriety of that arbitration:

> That's a fairly critical moment, when a company launches litigation against a sovereign.  They knew what they were doing.  Chevron at that time made the calculated decision that it would make Ecuador its adversary.  It was not the other way around. . . . It was Chevron that made the strategic decision to make the Republic its litigation adversary and to make the Republic a target of its public relations campaign.

*Id.* at 429:14-430:2.  By targeting the Republic and forcing it into certain, overlapping positions with the LAPs, Chevron used the word "collusion" so frequently that it was reprimanded by this Court's Honorable Judge Leonard Sand.[2]  Nor should it be surprising that after Chevron

---

[2] "I know Chevron is enamored with the word 'collusion.'  They [Chevron's opponents'] never 'talk' and they never 'write'; they 'collude.'  And . . . I think maybe . . . that's overworked."  Ex. 3, Hr'g Tr., *Republic of Ecuador v. ChevronTexaco Corp.*, No. 04-cv-8378 (S.D.N.Y. Apr. 19, 2007) at 7:15-18; *see also* Ex. 2 at 430:17-24.

3

launched a public relations and lobbying campaign against the State and its politicians[3] the Republic eventually chose to protect its Sovereign interests and respond to any attacks on its system of government, from whatever source.  That hardly means that the Republic's public relations efforts were intended to benefit anyone other than the Republic.  And it surely is not evidence that the Government intervened on the LAPs' behalf in the Lago Agrio case.

Chevron's theory of relevance is that anyone who disagrees with it—including politicians, lobbyists, professionals, authors, bloggers, attorneys, public relations professionals, governments and NGOs—are *all* subject to discovery and *all* part of an extortionate scheme.  But while the standard of relevance may not be demanding, it is not unlimited.  Chevron may have a wish list that its requested discovery might in theory help it in the identified foreign proceedings, but it instead must show that the discovery will *likely* yield evidence actually relevant to issues before those courts.  Chevron has utterly failed to do so.[4]

## II.  Chevron Makes No Effort To Address Its Flawed Use Of Section 1782 To Obtain Documents Belonging To A Foreign Sovereign

Chevron discards altogether the nature of its request—that it seeks through a Section 1782 action the discovery of sovereign documents.  But the legislative history of Section 1782 makes clear that Congress was seeking to extend *courtesies* to foreign sovereigns, not impose *burdens* on sovereigns.  *See, e.g.*, *John Deere Ltd. v. Sperry Corp.*, 754 F. 2d 132, 135 (3d Cir. 1985) ("As a cooperative measure, section 1782 cannot be said to ignore those considerations of

---

[3]  Ex. 4, Hr'g Tr., Treaty Arbitration (Jan. 20, 2014) at 38:5-48:17. *See also* Ex. 5, Letter from Four Senators (June 25, 2009) (requesting that U.S. Trade Representative allow the Ecuadorian proceedings to continue without the actions requested by Chevron); Ex. 6, State Department Email (Sept. 7, 2007) (Chevron using threats against trade program renewal as "a blunt instrument").

[4]  Chevron offers its offensive but unsupported claim that the documents could yield evidence of witness tampering. Chevron, however, has not identified a single witness it claims has been or might be wrongfully influenced. Ironically, it is Chevron that chose to pay two of its witnesses *at least* hundreds of thousands in cash benefits. Ex. 7, Chevron Payments to Borja (reflecting payments in excess of $900,000 to Borja, not including indemnification of legal fees, payment to accountant, and other sundry payments); Ex. 8, Chevron-Guerra Contract of January 27, 2013 (showing benefits to Guerra valued well in excess of $300,000 over two-year period).

comity and sovereignty that pervade international law. . . . [T]he legislation is largely exemplary and aspirational, an attempt to stimulate reciprocity."); *In re Request for Assistance*, 848 F.2d 1151, 1154 (11th Cir. 1988) ("By taking the initiative in foreign cooperation, Congress also attempted to stimulate reciprocity."). By relying on Section 1782 to compel the production of sovereign documents, Chevron seeks to turn the statute on its head without regard for the natural consequences. After all, what kind of reciprocity would such an interpretation of this statute ensure from foreign courts? Chevron has cited no precedent pursuant to which Section 1782 has been used to obtain sovereign documents, and the statute should not be so misused.

***Chevron fails to address the burden and intrusion of discovery on the Republic:*** Chevron claims that the Republic "does not have standing to assert undue burden" because MCSquared, not the Republic, bears the burden of production. Dkt. 36 at 27 n.10. But parties other than the express target of a subpoena may move to quash on the basis of undue burden so long as "the objecting party has a personal right or privilege regarding the subject matter of the subpoena." 9A Wright and Miller, *Federal Practice and Procedure* § 2463.1 (West 2014); *see also* Dkt. 32 at 24 (collecting cases sensitive to the burden of production on a non-party). First, production of the documents here would reveal government communications—political by nature, potentially implicating trade and foreign policy issues—that were at all times intended to be confidential. Disclosure under such circumstances would necessarily be "intrusive" and "burdensome," especially when weighed against Chevron's weak claims of relevancy. Second, if Chevron is permitted to rifle through the files of MCSquared, the Republic would be forced to review, log, and litigate the application of the privileged communications. Finally, Chevron intends to use any discovery obtained here in the pending Treaty Arbitration, Dkt. 36 at 31, thus achieving indirectly that which it cannot achieve directly: eliciting non-reciprocal discovery from

the Republic. This abusive request is "invasive of sovereign dignity" and inconsistent with the "grace and comity" afforded to the Republic. *See Aurelius Capital Master, Ltd. v. Republic of Argentina*, — F. App'x —, 2014 WL 7272279, at *3 (2d Cir. 2014).

**The subpoenaed discovery is immune:** The Republic is presumptively immune from "the expense, intrusiveness, and hassle of litigation" in the United States—here, fielding Chevron's subpoena. *EM Ltd. v. Republic of Argentina*, 695 F.3d 201, 210 (2d Cir. 2012). Chevron's opposition confirms that it has no response to this. Instead, it mischaracterizes this dispute as a replay of *Republic of Argentina v. NML Capital*, — U.S. —, 134 S. Ct. 2250 (2014). In so doing, Chevron fails to respond to the stark contrast between *NML* and this case—an issue squarely presented in the Republic's brief. Dkt. 32 at 22 & n.14.

*NML* concerned a subpoena issued in an enforcement proceeding against a sovereign that explicitly shed its immunity. 134 S. Ct. at 2253 & n.1. This case involves a subpoena separate from any enforcement proceeding and one that is directed to a Sovereign's agent cloaked in immunity. As this Circuit found, "it is important to distinguish discovery requests made before a court [that] conclusively has jurisdiction over a foreign sovereign from those made after such jurisdiction has been ascertained." *See EM Ltd.*, 695 F.3d at 209-10. Only *after* jurisdiction is established over the sovereign does a private litigant have the power (via the court) to compel discovery from a foreign state. In *NML*, Argentina's express waiver of immunity subjected it to the power of the courts "in the same manner and to the same extent as a private individual under like circumstance." 134 S. Ct. at 2256. This Circuit in *Export-Import Bank of the Republic of China v. Grenada*, 768 F.3d 75 (2d Cir. 2014), interpreted *NML* to "endorse[ ] an approach to

6

discovery . . . more generally consonant with the Federal Rules of Civil Procedure," but only after "jurisdiction over the foreign sovereign has been established." *Id.* at 93.[5]

Derivative immunity likewise shields MCSquared from Chevron's fishing expedition. Chevron does not contest this, either. Instead, it asserts that MCSquared is not protected under the FSIA only because it is not an "agency or instrumentality" of the Republic. *See* 28 U.S.C. § 1603(a). But that is beside the point. It is not the Republic's contention that MCSquared is a state agency, only that MCSquared is a state *agent*. Chevron does not dispute that the Republic has a principal–agent relationship with MCSquared. Nor does it offer case law establishing that derivative immunity is inappropriate in such circumstances.[6] Nor does the text of the statute suggest that sovereign agents fall outside the FSIA's protective scope. *See* 28 U.S.C. § 1603(a) ("A 'foreign state' . . . *includes* . . . ."). The Republic's immunity is not compromised merely because its agent, acting in the course and scope of its agency, is in possession of the targeted discovery.

***The Republic has a valid basis on which to assert deliberative process privilege:*** To be clear, the Republic has never made a "categorical assertion" of the deliberative process privilege over "all" the discovery. Rather, if documents are ordered produced, the Republic's U.S.

---

[5] Chevron does not attempt to argue that this Court has jurisdiction over either the Republic or its property. *See* Dkt. 36 at 24 ("Chevron's petition is not an attempt to assert jurisdiction over the ROE."). Nor could it. Chevron may not "copy, test, or sample" the documents it seeks, Fed. R. Civ. P. 34(a)(1), without first "exercising dominion over sovereign property." *NML Capital, Ltd. v. Republic of Argentina*, 699 F.3d 246, 262 (2d Cir. 2012). That is precisely what § 1609 forbids. Absent a jurisdictional hook, Chevron has no claim to the type of discovery afforded by *NML*. "[G]enerally a plaintiff may be allowed limited discovery with respect to the jurisdictional issue; but until she has shown a reasonable basis for assuming jurisdiction, she is not entitled to any other discovery." *Filus v. LOT Polish Airlines*, 907 F.2d 1328, 1332 (2d Cir. 1990). Chevron's subpoena is anything but circumspect and admittedly unrelated to jurisdiction.

[6] The only two cases cited by Chevron to support its argument are unpublished, irrelevant, and originate from the same litigation. *See Mare Shipping Inc. v. Squire Sanders (US) LLP*, 574 F. App'x 6 (2d Cir. 2014); *In re Mare Shipping Inc.*, 2013 WL 5761104 (S.D.N.Y. 2013). Neither addresses the question presented here: whether a common-law agent falls within the protective scope of the FSIA through derivative immunity. Nor does Chevron explain why it would not.

counsel will coordinate with the appropriate agency head to ensure the good faith assertion of privilege over those communications to which the privilege may apply.

On the law, Chevron is simply wrong. It cites no authority criticizing precedent from this Court that "foreign governments are entitled to protect their executive deliberations."[7] *LNC Invs., Inc. v. Republic of Nicaragua*, No. 96 CIV. 6360, 1997 WL 729106, at *3 (S.D.N.Y. Nov. 21, 1997). This Circuit understands "that Congress intended for courts to handle claims of privilege [by foreign governments] using the existing procedures under the Federal Rules." *EM Ltd.*, 695 F.3d at 210 (citing H.R. REP. 94-1487, 22-23, 1976 U.S.C.C.A.N. 6604, 6621-22, 1976 WL 14078). The FOIA case law cited by the Republic controls to the extent that it incorporates privilege law. *See* Dkt. 32 at 33-34; *see also United States v. Weber Aircraft Corp.*, 465 U.S. 792, 799, 104 S. Ct. 1488, 1493 (1984) (incorporating judicial privileges to FOIA).

Some courts have described the deliberative process privilege as "discretionary," but the Second Circuit has not. *See, e.g.*, *Brennan Ctr. for Justice at New York Univ. Sch. of Law v. U.S. Dep't of Justice*, 697 F.3d 184, 194 (2d Cir. 2012) (silent on discretion). Chevron's attempt to overcome the privilege fails, particularly where it does not identify any particular need for the discovery and where the Republic's "deliberative process" is not central (or even relevant) to the foreign proceedings. *See* Dkt. 36 at 34; *see also Five Borough Bicycle Club v. City of New York*, No. 07 CIV. 2448 (LAK), 2008 WL 4302696, at *1 (S.D.N.Y. Sept. 16, 2008) (weighing the need for discovery by its relevance, burden, availability, the dispute's importance, and possible effect on deliberations). Similarly, Chevron fails to demonstrate that the privilege should be

---

[7] Chevron's dismissive attitude of comity is inconsistent with longstanding precedent, and its assumption that it can determine what Ecuadorian policy deliberations merit protection is self-serving. *See* Dkt. 36 at 34, 35 n.13. The MCSquared contract alone establishes that MCSquared helped formulate strategic informational policy and was relied upon to offer "legal, lobbying, diplomatic, and communications" recommendations. Dkt. 4-65 at Clause 4.

overcome due to the Republic's alleged "malfeasance" but cites no Second Circuit law applying this exception. *See* Dkt. 36 at 34.

***In Camera* Review and Modification of Subpoena:** Even if Section 1782 could be used to reach Ecuador's documents, in light of long-standing comity principles, this Court should accommodate the competing demands by ensuring production of only documents relevant and material to the two foreign proceedings while protecting from disclosure all other sovereign documents. This could be accomplished, first, by modifying the subpoena, *see* Dkt. 32 at 18-19, and, second, by the Court (or a special master) first reviewing the documents *in camera*. *Id.* at 19. *Chevron has not opposed this request*. In this way, the Court can protect confidential, governmental documents in a manner no less than the United States would expect courts abroad to protect U.S. confidential documents.

### III.  Absent A Protective Order, This Court Should Grant Reciprocal Discovery

Chevron cannot have it both ways. If, as Chevron claims, it filed its Section 1782 Application to obtain "limited" discovery for use in the LAPs' enforcement efforts and the Gibraltar proceedings, Dkt. 2 at 2, then the Republic's request for an order limiting the use of discovery to those proceedings should not be controversial. But Chevron nonetheless concedes that it intends to backdoor any documents obtained from the discovery process into the ongoing Treaty Arbitration. Dkt. 36 at 31. In its own words, "Chevron should not be foreclosed from using this evidence in the Treaty Arbitration." *Id.*[8]

Despite Chevron's contention that "no grounds exist" for a protective order, Dkt. 36 at 38, there is good cause for this Court to limit the use of discovery to the foreign proceedings for

---

[8] In its most recent arbitral pleading filed just last week, Chevron alleged that by hiring MCSquared "Ecuador took its coordination of efforts with the Plaintiffs to promote the enforcement of [the] Judgment [to] a new level" Ex. 9, Supp. Reply, *Chevron Corp. v. Republic of Ecuador*, PCA Case No. 2009-23 (Jan. 14, 2015) at 217 n.874; *see id.* at 211 n.857 (alleging MCSquared played a role in the "Dirty Hand" campaign).

9

which they are sought.  First, allowing Chevron to have unfettered use of the Republic's documents contravenes this Circuit's recent admonition against discovery that "invades" a Sovereign's entitlement to "grace and comity."  *Aurelius*, 2014 WL 7272279, at *3.  Second, Chevron sought this discovery *only* for use in specific foreign proceedings, and a protective order will ensure that Chevron keeps its word.  Third, Chevron fails to appreciate that it is directly adverse to the Republic and that its Application effectively seeks disfavored party-to-party discovery.  Such discovery is disfavored because such disclosures should be consistent with the forum's governing rules and policies and prevent one party from gaining an unfair procedural advantage.

In the absence of a protective order, the Republic should obtain reciprocal discovery as one-sided discovery to Chevron would bestow upon it a windfall in the Treaty Arbitration.  *See In re Esses*, 101 F.3d 873, 876 (2d Cir. 1996) (per curiam).  Chevron argues that reciprocal discovery is available only where both petitioner and respondent are parties to the underlying proceeding.  Dkt. 36 at 36-37.  Chevron's argument is unavailing, however, if Chevron is permitted to use any discovery granted here for use in the arbitration.[9]

## CONCLUSION

For the foregoing reasons, the Republic respectfully requests that this Court quash or modify the subpoena.  To the extent the Court orders documents produced, this Court should grant the Republic's request for an appropriate protective order and reciprocal discovery.[10]

---

[9] For its part, the Treaty Arbitration Tribunal has never indicated that party-to-party disclosure is "closed."  And Chevron cites to no evidence otherwise.  There, a party litigant must ask for disclosure and for the Tribunal to decide the party's request.  Relatedly, Chevron observes that the Republic, like Chevron, has also relied on Section 1782 to obtain discovery.  The Republic, however, has *never* applied for Section 1782 discovery to obtain property *belonging to Chevron*.

[10] In compliance with Judge Kaplan's Individual Rules of Practice, counsel for the Republic is unavailable for any oral hearing on Monday, February 23, 2015.

Dated:   Washington, DC
         January 21, 2015


Respectfully submitted,

*/s/ Eric W. Bloom*

| | |
|---|---|
| Eric W. Bloom (*pro hac vice*) | Aldo A. Badini |
| WINSTON & STRAWN LLP | WINSTON & STRAWN LLP |
| 1700 K Street, N.W. | 200 Park Avenue |
| Washington, DC 20006 | New York, New York 10166 |
| Phone:  (202) 282-5000 | Phone:  (212) 294-6700 |
| Fax:      (202) 282-5100 | Fax:      (212) 294-4700 |
| E-mail: ebloom@winston.com | E-mail: abadini@winston.com |

*Attorneys for Proposed Intervenor*
*The Republic of Ecuador*